NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELIZABETH VASQUEZ, | Civil Action No. 13-5759 (SDW)(SCM) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | September 2, 2015 |

**WIGENTON,** District Judge.

Before the Court is Plaintiff Elizabeth Vasquez's ("Plaintiff" or "Vasquez") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") that she is not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court **AFFIRMS** the Commissioner's decision.

**I.  PROCEDURAL AND FACTUAL HISTORY**

**A. Procedural History**

On November 28, 2006, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), both of which were denied initially and upon reconsideration. (R. 163-64, 214-24). Plaintiff's subsequent request for a hearing before an administrative law judge ("ALJ") was granted, and a hearing was held before ALJ Leonard Olarsch

("ALJ Olarsch") on November 4, 2009. (R. 224). Plaintiff appeared and testified at the hearing. (R. 41-70). On December 8, 2009, ALJ Olarsch issued a decision finding Plaintiff ineligible for disability benefits as she could perform the full range of sedentary work. (R. 186-202). Plaintiff appealed the decision. (R. 261.) On September 22, 2010, the Appeals Council remanded the matter to ALJ Olarsch for a new hearing in order to expand the evidentiary record, give further consideration to Plaintiff's residual functional capacity ("RFC"), and obtain testimony from a vocational expert. (R. 183-185). Following a second hearing on January 5, 2011, ALJ Olarsch again rejected Plaintiff's application after deeming Plaintiff capable of performing sedentary work in low-stress, simple, and repetitive jobs. (R. 186-202). Plaintiff appealed this decision to the Appeals Council on March 22, 2011. (R. 204, 306-15). The Appeals Council remanded the matter to ALJ Hilton Miller ("ALJ Miller") on September 26, 2012. (R. 203-207). On February 22, 2013, after conducting a third hearing on this matter, ALJ Miller denied Plaintiff's application. (R. 10-34). On July 26, 2013, the Appeals Council declined to review ALJ Miller's decision, rendering the decision final. (R. 1-5). Plaintiff now seeks a reversal of the decision or, in the alternative, a remand and order for a new hearing. See Dkt. No. 1, Complaint, at p. 3.

    **B. Factual History**

        **1. Personal and Employment History**

Plaintiff was forty-five years old at the time the instant appeal was filed in 2013. See Complaint, ¶4. She holds a high school diploma and has had prior work experience as a cashier and stock clerk. Id. Plaintiff alleges that she became disabled as of November 28, 2006, due to the following medical impairments: "orthopedic, neurological, pulmonary and psychiatric conditions as well as hepatitis C, anemia and obesity." Id. at ¶ 5. Plaintiff is married, has three adult children, and takes care of her two teenaged nephews. (R. 131-33, 174).

### 2. Medical History

The record reflects that Plaintiff was examined by more than ten medical doctors and healthcare practitioners in relation to her disability claim. (R. 13-28). In addition, Plaintiff testified about her health during two hearings before ALJ Olarsch and during a third hearing before ALJ Miller. (R. 41-70, 71-104, 105-162). The following is a brief summary of the medical evidence:

Plaintiff alleges that she has been unable to work due to physical and psychiatric ailments. (R. 16). Specifically, she contends that she has symptoms related to a herniated disc, scoliosis, kidney problems, intestinal problems, hypertension, and depression. Id. According to Plaintiff, these conditions have caused her muscle spasms and pain and have impacted her ability to sleep, stand, sit, walk, lift, squat, bend, reach, kneel, climb stairs, remember, concentrate, understand, follow instructions, get along with people, and complete tasks. Id.

Regarding her physical impairments, Plaintiff had a slip and fall accident in 2000 and injured her lower back, for which she was prescribed Darvocet/Percocet as needed, physical therapy, and injections. (R. 193). On August 14, 2002, Howard Hirsch, M.D. ("Dr. Hirsch"), concluded from Plaintiff's magnetic resonance imaging ("MRI") that Plaintiff had some degenerative disc changes and minimal annulus bulges but that there was no evidence of disc herniation, spinal stenosis, or nerve root impingement. (R. 508).

On June 21, 2004, an ultrasound report indicated that Plaintiff was status post cholecystectomy. (R. 501).

On July 19, 2007, Plaintiff saw Dr. Wayne Seigel ("Dr. Seigel"), a gastroenterologist, for complaints of abdominal pain. Id. On July 25, 2007, Dr. Seigel diagnosed Plaintiff with hepatitis C. Id. Dr. Siegel treated Plaintiff with pegylated interferon and Ribavirin therapy. Id. Treatment lasted for forty-eight weeks. (R. 566). In a November 2, 2009 letter summarizing his treatment

notes, Dr. Seigel remarked that Plaintiff's hepatitis C was cured. (R. 564-66). He also opined that "the likelihood of a relapse in [Plaintiff's] hepatitis C is less than 3% in the absence of a new contact with the virus." (R. 566).

On May 12, 2008, Dr. Hongya Song, M.D. ("Dr. Song"), diagnosed Plaintiff with a herniated disc, scoliosis, hypertension, hepatitis C, and kidney stones. (R. 550-51).

On July 16, 2012, Dr. Robert A. Fogari, M.D., PA ("Dr. Fogari"), noted that Plaintiff weighed 223 pounds and was five feet and three inches tall. (R. 582).

Regarding her mental impairments, on May 19, 2007, at the request of the Division of Disability Determination Services ("DDS"), Plaintiff saw Dr. Alec Roy ("Dr. Roy") for a mental status evaluation. (R. 174). Plaintiff reported that she had been prescribed Paxil by her primary care physician for depression and anxiety and that she had been taking Paxil sporadically for the last three to four years. (R. 517). Though she was not seeing a psychiatrist at the time, she had seen a psychiatrist at age 21 when she was twice hospitalized for attempted suicide. Id. That was the last time Plaintiff received any mental health treatment. (R. 194). During her evaluation, Plaintiff reported that her anxiety attacks felt like heart attacks: her chest would get tight and she would be unable to breathe. Id. She also told Dr. Roy that her appetite was all right but that she had low energy and always felt depressed. Id. Dr. Roy diagnosed Plaintiff with dysthymic disorder and panic disorder and gave Plaintiff a global assessment of functioning ("GAF") score of 60. (R. 519).

On December 18, 2012, Dr. A.J. Candela, Ph.D. ("Dr. Candela") evaluated Plaintiff. (R. 645-47). Dr. Candela diagnosed Plaintiff with posttraumatic stress disorder and depression and gave Plaintiff a GAF score of 50. (R. 647).

### 3. Hearing Testimony

At the first hearing on November 4, 2009, Plaintiff testified that she weighed 195 pounds. (R. 174). She testified that she lost weight after taking medication for hepatitis C, which Plaintiff was diagnosed with in 2008. Id. At the time of the hearing, Plaintiff lived with her nineteen-year-old and thirteen-year-old nephews and supervised the younger one. Id. Although Plaintiff occasionally drove herself places, Plaintiff's nephew drove her to the hearing. Id. Plaintiff completed high school and, in 1988, received a certificate for nursing assistance. Id. Plaintiff had a herniated disc in her lower back but had not had surgery for it. Id. Plaintiff also testified that she had scoliosis, arthritis in her neck to her legs, and kidney stones. Id. She said that her stomach would swell, that she was fatigued, and that she had pain and hives. Id. Though Plaintiff was depressed from having hepatitis C, she did not see a psychiatrist. Id. In October 2008 and once before then, Plaintiff went to the emergency room for pain and was given morphine. Id. She regularly cooked, cleaned, and shopped for groceries; however, her nephew regularly accompanied her on her shopping trips since she could not carry the bags. Id. Plaintiff also testified that she would become fatigued and get cramps in her legs whenever she walked one block, that she could lift fifteen pounds, and that her wrists and shoulders hurt from the arthritis. Id.

At Plaintiff's second hearing on January 5, 2011, Plaintiff asked for a closed period of disability from November 28, 2006, to November 2, 2009. (R. 189). Plaintiff testified that her treatment for hepatitis C lasted a year and that during that time she felt tired, drained, chilled, and in pain (R. 194). During that time, Plaintiff's children often drove her to the doctor; Plaintiff drove herself only three times. Id. Plaintiff did not see a psychiatrist during that time but testified that she was placed on a waiting list to see one. Id. She had both Medicaid and an HMO. Id. Plaintiff said that she was always in bed and that everything bothered her. Id. Plaintiff worked at Kohl's

until November 28, 2006, when she stopped because of her illness. Id. She also stopped babysitting due to her hepatitis C. Id.

Plaintiff then had a third hearing on January 15, 2013—this time before ALJ Miller. (R. 105-62). Plaintiff was forty-four years old at the time of the hearing. (R. 114). Plaintiff testified that she was supposed to get interferon treatment again for her hepatitis C the previous month but that it was delayed due to her anemia. (R. 111). Plaintiff testified that her lower back would hurt often, which prevented her from performing tasks while sitting down and from doing laundry. (R. 115). Plaintiff also said that she occasionally lost her balance and fell. (R. 115-16) Plaintiff stated that her husband was supporting her financially but that he also had hepatitis and was on disability. Id. Plaintiff testified that, since 2007, her condition worsened and that she had been seeing a psychiatrist for about a year. (R. 119-22). Plaintiff also said that she was still depressed and that she weighed 240 pounds. (R. 122-23).

Finally, Plaintiff testified that she was a stay-at-home mother from 1990 to 1995 while her three children were young. (R. 131-33). At the end of the hearing, ALJ Miller then posed several hypotheticals to a vocational expert to determine whether there existed work in the national and local economies that plaintiff was capable of performing. (R. 133-36, 150-51, 155-56). The vocational expert opined that there existed several representative jobs, such as a telephonic position, a lens inserter, an order clerk, and a laminator, in the national and local economies that a person with limitations similar to Plaintiff's could perform. (R. 134-35, 151, 155-56).

## II.   LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the

ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Bailey v. Comm'r of Soc. Sec., 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" Bailey, 354 F. App'x. at 616 (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." Cruz v. Comm'r of Soc. Sec., 244 F. App'x. 475, 479 (3d Cir. 2007) (citing Hartranft, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. See Scott v. Astrue, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." Cruz, 244 F. App'x. at 479 (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (quoting Saldana v. Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).  Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

### B. The Five–Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 480

(3d. Cir. 2007). If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; SSR 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an

impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the SSA is "responsible for providing evidence that

demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.   DISCUSSION

At step one of the disability analysis, ALJ Miller properly found that Plaintiff had not engaged in SGA since November 28, 2006, the alleged onset date of Plaintiff's disability. (R. 15).

At step two, ALJ Miller properly found that Plaintiff suffered from the following severe impairments: "degenerative disc disease with herniated nucleus pulposus and scoliosis, hepatitis C, anemia, obesity, asthma with asthmatic bronchitis, history of kidney stones with lithotripsy procedure, posttraumatic stress disorder (anxiety), and depression." Id.  In making this finding, ALJ Miller considered Plaintiff's testimony; Plaintiff's August 14, 2002 MRI; Plaintiff's June 21, 2004 ultrasound; Dr. Candela's December 18, 2012 consultative psychological examination; Dr. Song's May 12, 2008 consultative physical examination; and Dr. Fogari's 2012 treatment records. (R. 16).  ALJ Miller found that these severe impairments "significantly interfere with [Plaintiff's] ability to perform basic work activities on a regular and continuing basis." Id.  ALJ Milller's findings of severe impairment are supported by substantial evidence in the record.

ALJ Miller also properly found that Plaintiff's hypertension was not a severe impairment since there was no evidence that Plaintiff had undergone any treatment for her hypertension or that Plaintiff's hypertension more than minimally limited her functioning. Id.  ALJ Miller also properly found that Plaintiff's cognitive impairments were not severe. (R. 16-17).  In making this determination, ALJ Miller relied on Dr. Roy's May 19, 2007 mental status evaluation. (R. 17). ALJ Miller cited Dr. Roy's treatment notes in which he observed that Plaintiff could follow

instructions, hold a conversation, spell, and perform simple calculations. He further noted that Plaintiff's psychiatric symptoms were mild and that Plaintiff had recently engaged in semi-skilled work as a babysitter. Id. Thus, ALJ Miller concluded that "[s]uch evidence suggests that the claimant has the ability to learn and perform more than just simple tasks, and that the claimant's cognitive functioning is above borderline." Id. ALJ Miller supported his findings with substantial evidence that Plaintiff's hypertension and cognitive impairments were not severe; therefore, his findings are not clearly erroneous.

At step three, ALJ Miller properly determined that Plaintiff's impairments did not equal or exceed the impairments included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. First, ALJ Miller properly found that Plaintiff's symptoms associated with degenerative disc disease with herniated nucleus pulposus and scoliosis did not equal or exceed the severity set forth in listing 1.00. Id. Listing 1.04 requires that a Plaintiff have a disorder of the spine resulting in compromise of a nerve root with motor loss accompanied by sensory or reflex loss. 20 C.F.R. Pt. 404 Subpt. P, App. 1. In contrast to listing 1.04, Rashel Potashnik, M.D. ("Dr. Potashnik"), stated on December 16, 2012, that Plaintiff "entered the office without [an] assistive device at a reasonable pace . . . was independent with dressing and mounting [the] exam table [and] was able to squat [and] walk on heels and tiptoes." (R. 635). Dr. Potashnik also stated that a "[c]ervical spine examination revealed no tenderness on palpation and normal [range of motion]. Id.

Second, ALJ Miller properly found that Plaintiff's asthmatic symptoms did not meet or exceed the severity requirements set forth in listing 3.00. (R. 17). Listing 3.03 requires a claimant to have either chronic asthmatic bronchitis or asthmatic attacks that require physician intervention at least once every two months or at least six times a year. 20 C.F.R. Pt. 404 Subpt. P, App. 1. In

12

contrast to the requirements in listing 3.03, the record includes no objective evidence of Plaintiff having asthmatic attacks or having chronic asthmatic bronchitis. (R. 17).

Third, the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 includes no listings for anemia, a history of kidney stones with lithotripsy procedure, hepatitis C, or obesity. 20 C.F.R. Pt. 404 Subpt. P, App. 1. ALJ Miller, however, considered the effects of these impairments on each body system and properly found that they were not of a listing-level severity. (R. 17-18).

Fourth, ALJ Miller properly found that Plaintiff's mental impairments, considered singly and in combination, did not meet or exceed the impairments included in listings 12.04 and 12.06 of the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18). ALJ Miller properly found that the paragraph B requirements were not satisfied. Id. First, ALJ Miller found that Plaintiff had only mild restrictions in her daily living activities. Id. ALJ Miller cited to both Plaintiff's testimony at the hearing and to medical professionals that she had good hygiene, did not have a problem attending to her personal needs, cooked meals, did chores such as laundry and paying bills, went outside daily, drove and received rides to places, travelled independently, exercised weekly, and went grocery shopping. Id. Second, ALJ Miller found that Plaintiff had only moderate difficulties in social functioning. Id. ALJ Miller cited much of the evidence listed above as well as notes from medical professionals that Plaintiff was cooperative during medical appointments. Id. Third, ALJ Miller found that Plaintiff had only moderate difficulties with regard to concentration, persistence, or pace. Id. Again, ALJ Miller cited to much of the above-listed evidence as well as Plaintiff's testimony that she spent her time watching television and talking on the phone and that she could follow written and spoken instructions. (R. 18-19). Lastly, the record contains no evidence that Plaintiff experienced episodes of decompensation. (R. 19). ALJ Miller

also found that the paragraph C requirements were not met because Plaintiff had the ability to function outside a highly supportive living arrangement. Id.

For the above reasons, ALJ Miller properly found that Plaintiff's impairments did not equal or exceed the impairments in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before undergoing a step-four analysis, ALJ Miller determined Plaintiff's RFC. (R. 19-20). ALJ Miller properly found that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a). (R. 19). After an extensive review of the record, ALJ Miller found, specifically, that:

> [Plaintiff] has the ability to occasionally lift and/or carry up to 10 pounds, and frequently lift and/or carry less than 10 pounds. The claimant also has the ability to stand and/or walk (with normal breaks) for a total of about 2 hours in an 8-hour workday, and sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. The claimant further has the ability to frequently climb ramps or stairs, but she would be limited to occasional balancing, stooping, kneeling, and crouching. The claimant additionally should never crawl and climb ladders, ropes, or scaffolds. The claimant should also avoid exposure to hazards such as heights, and she should avoid concentrated exposure to odors, dusts, fumes, gases, poor ventilation and other respiratory irritants. From a mental standpoint, the claimant would be limited to simple, routine, and repetitive tasks that can be explained, and which are simple 1 to 2 step tasks at the entry-level and unskilled level. The claimant would further be limited to making only simple decisions, occasional changes in routine, and superficial contact with others. However, the claimant would be off task 5% of the time.

(R. 19-20). In making this determination, ALJ Miller considered both objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929 and Social Security Rulings ("SSRs") 96-4p and 96-7p. (R. 20). In support of his finding, ALJ Miller cited extensively to the testimony of Plaintiff, to a third-party function report that Plaintiff's son completed, and to the treatment and evaluative records of Dr. Fogari, Dr. Siegel, Carmelo Pingol, M.D., Wayne Tillman, Ph.D., Dr. Candela, Dr. Roy, Nikolaos

Galakos, M.D., Dr. Potashnik, Dr. Song, and Dr. Hoffman. (R. 20-27). In light of the substantial evidence presented by ALJ Miller, this Court finds that ALJ Miller properly determined Plaintiff's RFC.

At step four, ALJ Miller properly found that Plaintiff cannot perform her past relevant work. (R. 27). ALJ Miller cited to the vocational expert's testimony that Plaintiff cannot perform the work of a cashier, stock checker, or a babysitter. Id.

Lastly, at step five, ALJ Miller properly found that Plaintiff can perform work that exists in significant numbers in the national and local economies. (R. 27-28). ALJ Miller considered Plaintiff's age, education, work experience, and RFC as well as the vocational expert's testimony. (R. 27-28). The vocational expert determined that Plaintiff was capable of satisfying the requirements of the representative occupations of a charge account clerk, a lens inserter, an order clerk, and a laminator, which exist in the aggregate of thousands of jobs locally. (R. 28). Because Plaintiff is capable of performing work that exists in significant numbers in the national and local economies, Plaintiff is not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.

### **CONCLUSION**

Because this Court finds that ALJ Miller's decision is supported by substantial evidence in the record, the Commissioner's determination is **AFFIRMED**.

s/ *Susan D. Wigenton*<br>
**SUSAN D. WIGENTON**<br>
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Magistrate Judge Steven C. Mannion
      Parties

15